■ In the Matter of GLADYS H., a Child Alleged to be Permanently Neglected. FRANKLIN COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; STEPHEN H., Appellant. (And Two Other Related Proceedings.) [653 NYS2d 392] —Mikoll, J. P. Appeals (1) from an order of the Family Court of Franklin County (Garvey, J.), entered September 7, 1995, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to extend the placement of respondent's children with petitioner for a period of 12 months, and (2) from two orders of said court, entered September 7, 1995, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be permanently neglected, and terminated respondent's parental rights.

On June 15, 1994 petitioner filed two petitions seeking to adjudicate respondent's two children, Gladys (born in 1981) and Katherine (born in 1983), neglected children and terminate his parental rights pursuant to Social Services Law § 384-b. The children have been in petitioner's care and custody since August 26, 1990 when their mother died from a terminal illness. Previously, on August 24, 1989, in contemplation of the

mother's illness, Family Court approved a stipulation which provided that if the children's mother became unable to carry out her custodial responsibilities to the children for any reason, then custody was to vest in petitioner. Subsequently, Family Court approved a stipulation continuing custody with petitioner through February 6, 1991 and provided, *inter alia*, that respondent would have visitation. Family Court also ordered respondent to attend parenting classes, receive assistance from a parent aide, participate in mental health counseling and obtain suitable housing for himself and his daughters.

In 1992 Family Court determined that respondent's children were abused pursuant to Family Court Act article 10 and extended petitioner's custody from March 1993 to March 1994. Family Court also found that respondent had sexually abused his daughters and granted petitioner's request for custody (*see, Matter of Gladys H.*, 206 AD2d 606).

The petitions filed June 15, 1994 alleged that respondent had continually failed to participate in parenting classes and counseling and to obtain appropriate housing. A fact-finding hearing was held in November 1994. In January 1995, petitioner filed a petition seeking an extension of placement.

At the fact-finding hearing on the instant petitions respondent objected to giving testimony on the ground that his right against self-incrimination would be violated if he was forced to testify. The objection was overruled by Family Court. Family Court thereafter found the children to be permanently neglected. Following a dispositional hearing on June 12, 1995, Family Court ordered custody of the children to be permanently transferred to petitioner. The court, by separate order, extended placement an additional 12 months. Respondent appeals from the orders terminating his parental rights and extending placement. There should be an affirmance.

Respondent's contention that Family Court erred when it violated his right against self-incrimination by requiring that he answer certain questions concerning whether he had sexually abused his daughters is without merit. Although the 5th Amendment privilege against self-incrimination applies to civil proceedings, including Family Court proceedings (*see, Matter of Figueroa v Figueroa*, 160 AD2d 390, 391; *Matter of DeBonis v Corbisiero*, 155 AD2d 299, 300, *lv denied* 75 NY2d 709, *cert denied* 496 US 938), "[i]t is well settled that a blanket refusal to answer questions based upon the Fifth Amendment privilege against self-incrimination cannot be sustained absent unique circumstances" (*Chase Manhattan Bank v Federal Chandros*, 148 AD2d 567, 568; *see, Matter of Agnello v Corbisiero*, 177 AD2d 445, 446, *lv denied* 79 NY2d 758).

Respondent was asked on direct examination by petitioner's counsel, *inter alia*, "Do you continue to deny the finding of sexual abuse made by * * * Family Court * * * last year?", and respondent, relying on his 5th Amendment privilege, objected. Family Court overruled the objection and respondent answered, "Yes, I do."

At another point petitioner's counsel inquired, "[L]et me ask you the same question for June [1992] through June [1993]: What was your plan for resumption of contact between yourself and your daughters?" Respondent objected, asserting that the question presumed that he had contact with his daughters at that time. Family Court overruled the objection and respondent replied, "[T]here was supposedly sexual abuse against me. And I don't believe it. Proving it, I don't know how. But some day I will."

Respondent's argument that an admission that he had sexually abused his daughters could have subjected him to criminal sanctions and resulted in loss of his parental rights is ineffectual. Although respondent submitted no evidence that he has been subjected to criminal prosecution regarding any abuse of his daughters, his testimony that he refused to admit that he had sexually abused his daughters affected the results of the parental neglect proceeding. Such questions were relevant to Family Court's decision to terminate his parental rights. It was not improper in these circumstances for Family Court to compel respondent to decide whether to testify and face the possibility that his testimony may be used in a criminal proceeding or to remain silent and face the risk of losing the care and custody of his daughters. This dilemma does not deprive respondent of due process as he has not been prevented from offering evidence or cross-examining witnesses (*see, Matter of New York City Commr. of Social Servs. v Elminia E.*, 134 AD2d 501, 502). Respondent's testimony that he did not agree with the adjudication of abuse did not violate his 5th Amendment rights.

In any event, if such questions violated his right against self-incrimination, the error was harmless in view of the clear and convincing evidence in the record supporting termination of respondent's parental rights for permanent neglect (*see, People v Perez*, 160 AD2d 637, 638, *lv denied* 76 NY2d 793; *Levy v Levy*, 53 AD2d 833, *lv denied* 40 NY2d 808). The proof established that respondent failed to plan for the children's future and that petitioner diligently attempted to encourage and strengthen respondent's relationship with his daughters, thus discharging its statutory duty (*see, Matter of Gregory B.*,

74 NY2d 77, 86; *see also,* Social Services Law § 384-b [7] [f]; *Matter of Grace VV.,* 226 AD2d 772, 773-774).

Respondent failed to attend and substantially participate in mental health counseling and parenting classes (*see, Matter of Christopher II.,* 222 AD2d 900, 902, *lv denied* 87 NY2d 812; *Matter of Robin PP.,* 222 AD2d 762, 763). Respondent also failed to find appropriate housing for himself and his daughters. The record contains more than sufficient, clear and convincing evidence of defendant's failure to meaningfully participate in training and counseling services, to take advantage of visitation and to find appropriate housing for his daughters between 1991 and 1994. He clearly failed to work toward correcting the conditions which led to petitioner retaining custody of the two children (*see, Matter of Robin QQ.,* 226 AD2d 805, 806). An affirmance is therefore required.

Crew III, White, Yesawich Jr. and Peters, JJ., concur. Ordered that the orders are affirmed, without costs.